[Cite as *State v. Dodson*, 2025-Ohio-1733.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,            :

                                   No. 114326

    v.                             :

JEFFERY WAYNE DODSON,                       :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 15, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-647810-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Melissa Riley, Assistant Prosecuting Attorney, *for appellee.*

Allison S. Breneman, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Jeffery Wayne Dodson appeals his convictions on multiple sex-related offenses involving minors. For the reasons that follow, we affirm.

**Procedural History and Facts**

{¶ 2} In 2020, Dodson was charged with two counts of pandering sexually oriented matter involving a minor, felonies of the second degree, in violation of R.C. 2907.322(A)(2); eight counts of pandering sexually oriented matter involving a minor, felonies of the third degree, in violation of R.C. 2907.322(A)(5); and one count of possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A). The matter proceeded to a jury trial, at which the following pertinent evidence was presented.

{¶ 3} This case arose from a 2018 investigation into peer-to-peer file sharing of child sexual abuse material ("CSAM"). Internet Crimes Against Children ("ICAC") Taskforce Commander David Frattare connected with a peer-to-peer network user who shared CSAM with him. Using the IP address associated with file sharing, Frattare identified Dodson as the IP address subscriber. Frattare was familiar with Dodson from a 2011 investigation that resulted in a conviction of multiple counts of pandering sexually oriented matter involving a minor. *See State v. Dodson*, Cuyahoga C.P. No. CR-11-555731-A.[1]

{¶ 4} Frattare was able to obtain downloads of two files that Dodson shared with him via the peer-to-peer network. The first file was sent from Dodson's

---

[1] In August 2013, Dodson pleaded guilty to 21 counts relating to his use of his home computer to download child pornography. He was sentenced to four years in prison. *See State v. Dodson*, 2013-Ohio-1344 (8th Dist.) (affirming conviction but reversing the imposition of consecutive sentences because the trial court failed to make the requisite statutory findings), and *State v. Dodson*, 2014-Ohio-2272 (8th Dist.) (affirming the consecutive sentences imposed at resentencing). Dodson was on postrelease control when he was charged in the instant case.

IP address and downloaded on November 26, 2018. This file contained a video depicting multiple young male children who were naked and engaged in sexual activity. The second file was downloaded on November 28, 2018, and showed a young female child being raped by an adult male. Both files were uploaded from the IP address registered to Dodson's home address, phone number, and Time Warner account number.

{¶ 5} Frattare obtained a search warrant for Dodson's house, which was executed on December 7, 2018. Dodson, who lived alone, was home when the search warrant was executed. Investigators located a laptop computer in the kitchen during the search. The laptop was missing a hard drive, which investigators located in a locked safe. Investigators interviewed Dodson, who stated that he had been unable to open the safe for the past two or three years and inquired whether the officers had a drill to help him access the safe. On top of the safe, however, was a hand drawn mock-up of the safe as well as handwritten notes on how to access the safe. The safe was locked but investigators were able to pick the lock and access the contents of the safe, which included the Hitachi hard drive and paperwork relating to the sale of the house to Dodson.

{¶ 6} Retired forensic examiner Jeffrey Rice examined multiple electronic devices seized from Dodson's home. To examine the devices, Rice connected the electronics to a "write-blocker," which is designed to prevent data from being added or altered during the analysis. Rice made an exact copy of each device and used forensic software tools to examine the data.

{¶ 7} Rice discovered that the Hitachi hard drive contained approximately 80 thumbnail files of CSAM. According to Rice, thumbnail files are small pictures that are created when a user opens or downloads images or video files. He found that eight of the thumbnail tags depicted young girls engaged in oral sexual conduct. Rice also located a peer-to-peer sharing program, which is sometimes used by individuals to share child exploitation. Rice testified that he located significant keyword searches on the peer-to-peer sharing program including numerous search terms that denoted that Dodson was looking for young girls engaged in sexual conduct, young girls who had been drugged and raped, and children engaged with each other in sexual conduct.

{¶ 8} The Hitachi hard drive also contained documents including an application for food stamps with Dodson's full name, phone number, home address, date of birth, email address, and social security number on the application. The document was dated November 30, 2018, just days before the execution of the search warrant, and contained Dodson's electronic signature. The drive also contained a word document signed by Dodson regarding phone service issues he encountered in late 2018, right before the search warrant was executed.

{¶ 9} The jury convicted Dodson of all charges. The trial court sentenced him to eight years in prison on Counts 1 and 2, 36 months in prison on each of Counts 3 through 10, and 12 months in prison on Count 11, to run consecutively, for a total of 41 years in prison. Dodson now appeals.

**Assignments of Error**

> I. The jury found, against the manifest weight of the evidence, that the appellant committed the acts alleged in the indictment.

> II. The evidence was not legally sufficient to sustain a guilty verdict.

> III. The trial court erred by imposing consecutive sentences.

**Law and Analysis**

{¶ 10} In the first and second assignments of error, Dodson claims that his convictions were against the manifest weight of the evidence and were unsupported by sufficient evidence.

{¶ 11} When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The court examines all the evidence admitted at trial to determine whether such evidence, if believed, would convince a reasonable factfinder of the defendant's guilt beyond a reasonable doubt. *State v. Williams*, 2023-Ohio-2296, ¶ 81 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386.

{¶ 12} In contrast to a challenge based on sufficiency of the evidence, the "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other . . . .

Weight is not a question of mathematics but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins* at 387. In order to evaluate whether a judgment or verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Jordan*, 2023-Ohio-3800, ¶ 17, citing *Thompkins* and *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983). The Ohio Supreme Court has held that "[a] manifest-weight challenge should be sustained 'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at 175; *State v. Price*, 2024-Ohio-5598, ¶ 50 (8th Dist.).

{¶ 13} In both assignments of error, Dodson claims that there was no direct evidence to connect him to the hard drive found in the safe and he was never identified as the person who used the hard drive.

{¶ 14} Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Wilborn*, 2024-Ohio-5003, ¶ 38 (8th Dist.), citing *State v. Rodano*, 2017-Ohio-1034 (8th Dist.). "Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight

as direct evidence." *Wilborn* at *id.*, citing *State v. Cassano*, 2012-Ohio-4047, ¶ 13 (8th Dist.).

{¶ 15} In November 2018, ICAC Commander Frattare connected to Dodson's IP address and obtained two files containing CSAM. As a result, Frattare executed a residential search warrant on Dodson's residence where investigators located approximately 80 files of CSAM on the Hitachi hard drive, found in Dodson's safe. Although Dodson, who lived alone, claimed he had not been able to access the safe in the last two to three years, investigators located recently executed documents with Dodson's personal identifying information on the hard drive including an application for food stamps and a letter written by Dodson concerning phone-service issues he encountered in late 2018, just prior to the execution of the search warrant. Thus, ample evidence exists tying Dodson to the Hitachi hard drive from which the jury could infer he was the one who possessed and used the hard drive containing CSAM.

{¶ 16} The first and second assignments of error are overruled.

**Consecutive Sentences**

{¶ 17} In the third assignment of error, Dodson challenges the consecutive nature of his sentence.

{¶ 18} Pursuant to R.C. 2929.41(A), there is a presumption that a defendant's multiple prison sentences will be served concurrently, unless certain circumstances inapplicable in this case apply, *see*, *e.g.*, R.C. 2929.14(C)(1) through (3), or the trial

court makes findings supporting the imposition of consecutive sentences, including at least one of the following under R.C. 2929.14(C)(4)(a)-(c):

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to [R.C. 2929.16, 2929.17, or 2929.18], or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 19} "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing" and "incorporate its statutory findings into the sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, ¶ 29.

{¶ 20} Under R.C. 2953.08(G), an appellate court reviews the record and may increase, reduce, or otherwise modify a sentence that is appealed under R.C. 2953.08(G) or may vacate the sentence and remand the matter to the sentencing court for resentencing. We do not review the sentence for an abuse of discretion; rather we may take any action authorized by R.C. 2953.08(G) if we clearly and convincingly find either that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) or that the sentence is otherwise contrary to law.

{¶ 21} R.C. 2953.08(F) requires we review the entire trial-court record, including any oral or written statements made to or by the trial court at the sentencing hearing, and any presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed. *State v. Jones*, 2024-Ohio-1083, ¶ 12 (8th Dist.), citing R.C. 2953.08(F)(1) - (4).

{¶ 22} Dodson does not challenge that the trial court made the requisite statutory findings to impose consecutive sentences, nor does he argue that his sentence is contrary to law. Indeed, our review of the record shows that the trial court made the statutory findings to impose consecutive sentences and the sentence it imposed was not contrary to law. Dodson's challenge to his sentence is that the 41-year sentence imposed by the court was unsupported by the record.

{¶ 23} After a thorough review of the record, we cannot say that the trial court's sentence clearly and convincingly was unsupported by the record.

{¶ 24} In sentencing Dodson, the trial court noted that he had committed the worst form of the offense, that his offenses damaged people's lives forever, and that the danger he posed "is great and overwhelming." The court noted that Dodson not only downloaded CSAM but also disseminated it. The court emphasized that Dodson had committed the same crimes before and went to prison and, importantly, was on postrelease control for those crimes when he committed the crimes in the instant case:

> I think it's terrible, terrible. And he wouldn't accept responsibility. He
> went to prison for it previously and that didn't do a thing. It didn't do
> a thing. And the only time through the course of the trial that he pays

attention is when [the State was] showing the pictures of children. The only time he leaned into the monitor to pay attention was when [the State] was showing pictures of the children.

. . .

I also find that this is one of the worst forms of the offense, and I also find that he previously went to prison, and he's not learned a lesson, and I also find he has no remorse for his conduct.

{¶ 25} Dodson argues that the trial court "failed to consider that a 41-year prison sentence was vastly disproportionate to the conduct by Mr. Dodson," that Dodson could have "murdered a child and gotten less time in prison," and that "[m]ost other judges in Cuyahoga County would have sentenced" Dodson to "less than 10 years in prison or even considered community control." Dodson fails to support his claims, however, and it is not the job of this court to make his arguments for him. Briefly, the trial court did in fact consider the proportionality of Dodson's sentence when it stated twice during the sentencing hearing that it found that "consecutive sentences are not disproportionate to the seriousness of [Dodson's] conduct." Had Dodson wanted to challenge the proportionality of his sentence to other offenders, it was incumbent upon him to support such a claim.

{¶ 26} As this court recently stated:

[A] defendant has no constitutional right to concurrent sentences for two separate crimes involving separate acts. [Additionally,] if the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate.

*State v. Ward*, 2025-Ohio-835, ¶ 20 (8th Dist.) quoting *State v. Hairston*, 2008-Ohio-2338, ¶ 18 (8th Dist.), quoting *State v. Berger*, 212 Ariz. 473, 479 (2006).

{¶ 27} Dodson's sentence on each of his crimes is not disproportionally long and he has failed to demonstrate that the record does not support the imposition of consecutive sentences. The third assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR